# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

AMANDA JEAN TESKE,

Plaintiff,

v.

MARTIN J. O'MALLEY,
Commissioner of Social Security,

Defendant.

Case No. 23-CV-682-JPS

**ORDER**

## 1.    INTRODUCTION

Plaintiff Amanda Jean Teske ("Plaintiff") seeks to reverse the Commissioner of Social Security's (the "Commissioner") decision denying her benefits pursuant to the Social Security Act, 42 U.S.C. § 405(g). The parties have submitted their briefs on the matter. ECF Nos. 13, 14, 15. The parties do not dispute that remand is appropriate and warranted in this case. ECF No. 14 at 1. What is at issue, instead, is whether the Court should remand this case for calculation and award of benefits as opposed to a remand for further proceedings. *Id.*

Upon review of the entire record, and with the benefit of the parties' arguments, the Court finds that the Commissioner's decision must be reversed and remanded to the Social Security Administration for a calculation and award of benefits.

## 2.    BACKGROUND

### 2.1    Legal Framework for Social Security Disability Claims

To be eligible for disability benefits under the Social Security Act, a claimant must be deemed "disabled" by the Social Security Administration (the "SSA"). 42 U.S.C. § 423(a). In most cases, to determine whether a

claimant is disabled within the meaning of the Act, an administrative law judge ("ALJ") gathers evidence, holds a hearing, takes testimony, and performs a five-step legal evaluation of the claim. 20 C.F.R. § 404.1520.

The ALJ must determine whether: (1) the claimant is engaged in "substantial gainful activity"; (2) the claimant has a "severe medically determinable physical or mental impairment"; (3) the claimant's impairment is equivalent to one of the impairments listed in the appendix of the relevant disability regulation; (4) the impairment prevents the claimant from performing her past relevant work in light of her residual functional capacity ("RFC"); and (5) the claimant, considering her age, education, work experience, and RFC, can still perform another job that is available in the national economy. *Id.*

A claimant's RFC is an assessment of the most a claimant is able to do, notwithstanding her physical and mental limitations. *Elder v. Astrue*, 529 F.3d 408, 412 (7th Cir. 2008). According to Social Security Ruling ("SSR") 96-8p, the RFC is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities" in a work setting for eight hours per day, five days a week, or an equivalent work schedule. *Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996).[1] It entails "a function-by-function assessment based upon all

---

[1] The SSA publishes SSRs that "are binding on all components of the Social Security Administration." 20 C.F.R. § 402.35(b)(1). "These rulings represent precedent[ial] final opinions and orders and statements of policy and interpretations that [the SSA has] adopted." *Id.*

of the relevant evidence of an individual's ability to do work-related activities." *Id.* at *3.

## 2.2 Procedural Background

### 2.2.1 Before ALJ Parker

Plaintiff originally applied for disability benefits in February 2015. ECF No. 13 at 6. In August 2015, "after a second unfavorable determination from the Wisconsin Disability Determination Bureau," Plaintiff requested an administrative hearing. *Id.* She appeared before ALJ Parker for her hearing, and ALJ Parker issued "an unfavorable decision which maintained that [Plaintiff] could perform 'light' work." *Id.*

Plaintiff appealed the decision and provided "additional records from Dr. Elizabeth Polacheck [("Dr. Polacheck")], [a] physician whose opinion" ALJ Parker had rejected in reaching her unfavorable decision. *Id.* at 7. The Social Security Appeals Council (the "Appeals Council") affirmed ALJ Parker's decision. *Id.* Plaintiff appealed to this Court, ultimately resulting in a joint agreement to reverse ALJ Parker's decision and remand for further proceedings. *Id.*

In June 2019, Plaintiff appeared at a second hearing before ALJ Parker, at which time ALJ Parker "found [that Plaintiff was] entitled to a closed period of benefits" in a partially favorable and partially unfavorable decision. *Id.* at 2, 7. The decision "reasoned that while [Plaintiff] could not have performed her prior work as a lab technician between October 2014 and April 2017, . . . her mental limitations had resolved to the point where she could, and so she was not disabled anymore" from April 4, 2017 onward *Id.* at 2, 9. In other words, Plaintiff was found to be disabled from October 2014 to April 4, 2017, but was not found to be disabled thereafter. This decision reflected ALJ Parker's adoption of two RFCs: one for the period

before April 4, 2017, and one for the period after. In the former period, Plaintiff could perform "Light" work, subject to a series of nonexertional restrictions, but could not perform any job requiring a "Specific Functional Preparation" level greater than 3, which excluded her previous job as a lab technician. *Id.* at 8–9.

In September 2019, Plaintiff appealed to the Appeals Council, averring that there "was no serious evidence of an improvement in mental health" such that she should no longer be deemed disabled as of April 2017. *Id.* at 10. In March 2021, the Appeals Council overturned not only the unfavorable portion of ALJ Parker's decision (that concluding that Plaintiff was no longer disabled as of April 2017), but also the favorable portion (that concluding that Plaintiff was disabled from October 2014 to April 2017) and remanded for further consideration. *Id.* at 10–11.

### 2.2.2 Before ALJ Ritter

On remand, Plaintiff's case was heard by ALJ Ritter, who presided over a hearing and a supplemental hearing in 2022. *Id*. at 11; ECF No. 10-1 at 1168. ALJ Ritter heard testimony from an orthopedic surgeon, Dr. Elmi, who suggested an RFC limiting Plaintiff to "light" exertional requirements, albeit with a limitation on standing that would only permit sedentary work. ECF No. 13 at 11. Dr. Elmi noted, however, that Plaintiff's "main . . . allegation is the pain," and that he was "not qualified to testify in regard to the pain," and so his assessment of Plaintiff's functional limitations was made without regard to "the pain." ECF No. 10-1 at 1188–89

### 2.2.3 Before ALJ O'Grady

In November 2022, Plaintiff had yet another hearing before another ALJ after ALJ Ritter retired without issuing a decision. *Id.* The new ALJ, ALJ O'Grady, advised that she "had not listened to any of [the VE's] testimony

from the previous hearings" and that she had invited her own experts, including one Dr. Andrew Brown ("Dr. Brown"). *Id.* at 13.

Dr. Brown testified that Plaintiff had been diagnosed with "failed lumbosacral spine surgery" after several spine surgeries failed to resolve her pain, as well as with "chronic pain with an L4/5 disc degeneration," "left hip internal derangement including impingement syndrome," "labial tear," and a "capsular tear." *Id.*; ECF No. 10-1 at 1079. He noted that in addition to her spinal surgeries, Plaintiff additionally underwent "an arthroscopy on October 21st, 2021," as well as additional hip surgery—"labial repair, pincer excision, proximal femoral osteoplasty and a capsular repair"—in May 2022. *Id.* at 1079–80; *id.* at 1183 ("I did have right hip surgery in October [of 2021], but I do have a tear in my left hip that I'm getting done at the end of the month as well."); ECF No. 10-3 at 1570.

While he noted that "mental disorders" could aggravate her condition, Dr. Brown testified that had not reviewed Plaintiff's psychological records and could not therefore adequately comment on how and to what extent Plaintiff's psychological problems affected her condition. ECF No. 13 at 13; ECF No. 10-1 at 1069, 1081 ("[P]sychiatric would be beyond my area of expertise . . . . However, when one has chronic pain, usually there is depression associated with that."). Dr. Brown testified that Plaintiff's pain system is "hypersensitive," that she experiences "greater levels of pain from [her] condition than most people would," and that externalities such as weather changes and fatigue can aggravate her pain. ECF No. 13 at 14; ECF No. 10-1 at 1091 ("It's more of a generalized irritation of the neurologic tissue within the area of the surgery resulting in this hypersensitivity to pain."). He concluded that "on a good day," Plaintiff could "perform a job with restricted lifting requirements that did

not require her to sit more than six hours, or stay on her feet longer than three," but that she would not be able to perform as such on a bad day and could be expected to miss "at least one to two days per week due to exacerbations of her pain." ECF No. 13 at 14; ECF No. 10-1 at 1088 (Q: "So you're saying that's one to two days per week where she would be unable to perform work activities due to the migraines, correct?" A: "Correct. Also because just [sic] of the nature of her pain, the intensity and the complexity of it. Her ability to concentrate during work would be affected. The medications she's taking would also affect her ability to concentrate during work."). He also testified that depression, drowsiness, and the side effects from Plaintiff's medications would impair her concentration at work on a consistent, but varied, basis. ECF No. 13 at 14. Plaintiff averred to ALJ O'Grady that this testimony regarding her concentration and absenteeism matched the assessment of her physician, Dr. Polacheck, who asserted that Plaintiff "would be off-task more than 25% of the workday and would be absent at least four days per month" due to her pain. *Id.* at 15.

ALJ O'Grady also heard testimony from a VE, Mr. Lee Knutson ("Mr. Knutson"), who testified that an individual experiencing the "good day" that Dr. Brown had described could perform three jobs described in the DOT: document preparer, order clerk, or circuit-board assembler. *Id.* To estimate the number of jobs available for these positions, Mr. Knutson testified that he started with the total 2,578,000+ jobs in SOC 43-9061, multiplied them by three, and then divided them by 72. He then made a further reduction using a software program to account for many of these jobs being part-time. *Id.* Plaintiff objected to this methodology. *Id.* at 16.

ALJ O'Grady also heard testimony from Plaintiff herself. ECF No. 10-1 at 1057–77. Plaintiff testified that she stopped working in October 2014

"per doctor's orders" because her back "was continuously spasming" and "the pain was just getting too bad." *Id.* at 1058. She testified that she experiences "unbearable" back pain "24/7" to the point of causing her to "see[] stars" notwithstanding her extensive medication regimen, which includes multiple migraine medications, sleeping medication, and daily narcotic pain medication. *Id.* at 1060–64 (Plaintiff testifying to typically taking, inter alia, oxycodone three times daily and regularly utilizing fentanyl patches); *see also* ECF No. 10-2 at 230 (documenting previous prescriptions for, inter alia, Vicodin, morphine, Lunesta, and Wellbutrin) and at 909 ("[Plaintiff] doesn't feel like the Percocet is helping at all any more . . . . The Savella did not make a difference in her pain"). The pain shoots down her left leg, and she experiences numbness in the toes on that side to such an extent that she sometimes "can't even feel when [she's] walking on them." ECF No. 10-1 at 1064–65. When the pain is particularly bad, Plaintiff has to steady herself on a piece of furniture because "the pain . . . knocks . . . the wind out of [her]." *Id.* at 1065. Plaintiff testified that she also experiences migraines two to three times per week, and while medication helps, the migraines are "still . . . always there." *Id.* at 1064. Her medication regimen makes her drowsy and causes a loss of appetite. *Id.* at 1063–64. Plaintiff also represents that her condition limits her ability to drive for periods longer than roughly fifteen minutes and prevents her from being able to help with many household chores. ECF No. 10-2 at 239–42.

In March 2023, ALJ O'Grady issued a fully unfavorable decision. Her RFC finding roughly matched Dr. Brown's description of Plaintiff on a "good day." ECF No. 13 at 16. She rejected Dr. Brown's prediction of frequent work absences, characterizing it as speculative. *Id.* She also concluded that because Plaintiff "reported benefit from treatment when she

pursued it," Plaintiff would not experience exacerbations in pain that would cause her to miss work. *Id.* She conceded that Plaintiff could not return to her prior job as a lab technician but accepted Mr. Knutson's testimony that Plaintiff could perform work in the national economy as a document preparer, order clerk, or circuit-board assembler, and she rejected Plaintiff's objection to Mr. Knutson's "equal distribution" method. *Id.* at 16–17.

**3.     LEGAL STANDARD**

A district court has jurisdiction over a civil case challenging a final decision of the Commissioner. 42 U.S.C. § 405(g). The Social Security Act provides that a district court may affirm, modify, or reverse the decision of the Commissioner of Social Security and remand the cause for a rehearing. *Id.* However, the statute also states that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." *Id.* A court will uphold the Commissioner's decision if it is supported by substantial evidence and does not contain legal error. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

Substantial evidence is evidence that a reasonable person would accept as adequate to support the decision. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). A court determines whether the decision is supported by substantial evidence by reviewing the entire record, but it cannot substitute its judgment for that of the ALJ by reconsidering facts, re-weighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Id*. "Although this standard is generous, it is not entirely uncritical . . . ." *Steele*, 290 F.3d at 940 (citing *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)). A court must look to whether the ALJ articulated an "accurate and logical bridge from the evidence to his conclusion" that the

court can follow. *Clifford*, 227 F.3d at 872 (citing *Green v. Apfel*, 204 F.3d 780, 781 (7th Cir. 2000) and *Groves v. Apfel*, 148 F.3d 809, 811 (7th Cir. 1998)). Ultimately, the Court must remember that "it is not intended to be a rubber-stamp on the Commissioner's decision." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing *Clifford*, 227 F.3d at 869).

## 4.  ANALYSIS

As noted above, the parties do not dispute that remand is appropriate in this case. They do dispute, however, whether it would be appropriate to remand this case for an award of benefits. The Court addresses in turn Plaintiff's arguments, each of which Plaintiff contends supports an outcome of remanding for a calculation and award of benefits.

### 4.1  The Appeals Council's Reversal of ALJ Parker's 2019 Step Five "Other Jobs" Finding

Plaintiff first argues that the Appeals Council "abused its discretion . . . to reverse ALJ Parker's 2019 Step Five 'Other Jobs' finding." ECF No. 13 at 18. The Commissioner responds that the Appeals Council's order—which reversed ALJ Parker's decision and remanded for further consideration—is "not a final decision of the Commissioner" and is "therefore not reviewable under 42 U.S.C. § 405(g)." ECF No. 14 at 8 (citing *Weeks v. Soc. Sec. Admin. Comm'r*, 230 F.3d 6, 7 (1st Cir. 2000)). It is, instead, an "interim order," which Plaintiff "should have challenged . . . through a mandamus action when it was issued, rather than within this civil action, filed after the matter was remanded, reheard, and a new decision was issued by a different ALJ." *Id.*

The Court agrees with the Commissioner. 42 U.S.C. § 405(g) provides that an individual may obtain review of "any *final* decision of the Commissioner of Social Security . . . after a hearing." (emphasis added). The

Act does not itself define a "final" decision. Nevertheless, "various courts have held that an Appeals Council order remanding a case to the ALJ for further proceedings is not an appealable final decision." *Weeks*, 230 F.3d at 7 (collecting cases); *Martinez v. Barnhart*, 444 F.3d 1201, 1204 (10th Cir. 2006) ("[W]e do not have subject matter jurisdiction under 42 U.S.C. § 405(g) to review the propriety of the Appeals Council's remand order, or, more particularly, its determination that the first ALJ's decision was not supported by substantial evidence.") (citing *Weeks*, 320 F.3d at 7, 8); *Jody L.B. v. Comm'r of Soc. Sec.*, No. 5:21-CV-734 (CFH), 2022 U.S. Dist. LEXIS 87340, at *9 (S.D.N.Y. May 16, 2022) ("An Appeals Council's remand order is not a final reviewable decision.") (citing *Iwachiw v. Massanari*, 125 F. App'x 330, 331–32 (2d Cir. 2005)). That Plaintiff here "seeks review of the remand order in the context of h[er] appeal from the ALJ's subsequent denial of benefits . . . is a distinction without a difference." *Correia v. Berryhill*, No. 3:16-cv-30153-KAR, 2017 U.S. Dist. LEXIS 161622, at *23–24 (D. Mass. Sept. 29, 2017).

Plaintiff asserts that "the Commissioner provides no case law supporting h[is] position that non-final rulings by the Appeals Council are unreviewable no matter how abusive or consequential," ECF No. 15 at 8, but that assertion ignores the basic premise of limited judicial review. 42 U.S.C. § 405(g) expressly limits this Court's judicial review to "final" decisions. The federal district courts have no jurisdiction to review non-final rulings, irrespective of how "abusive" a litigant considers them. *Vande Merkt v. Astrue*, No. 09-C-4868, 2011 U.S. Dist. LEXIS 11556, at *7 (N.D. Ill. Feb. 7, 2011) ("Judicial review of Social Security proceedings is governed by 42 U.S.C. § 405(g), which allows review *only* 'after any final decision of the Commissioner of Social Security.'") (emphasis added).

Plaintiff also contends that the Commissioner's "position clashes with [the] Seventh Circuit's history of hearing challenges to non-final Appeals Council reopening decisions under 20 C.F.R. § 404.988." ECF No. 15 at 9 (citing *Dugan v. Sullivan*, 957 F.2d 1384 (7th Cir. 1992) and *Wyatt v. Barnhart*, 349 F.3d 983 (7th Cir. 2003)). The Court will reject this argument. It is an overbroad assertion; courts do not review "challenges to non-final Appeals Council reopening decisions" as a general matter, as Plaintiff suggests. *Id.* "Denial of a petition to reopen a previous decision does not constitute a reviewable final decision, . . . except in 'those rare instances where the Secretary's denial of a petition to reopen is challenged on constitutional grounds.'" *Johnson ex rel. Johnson v. Sullivan*, No. 88-C-7886, 1992 U.S. Dist. LEXIS 22115, at *17 (N.D. Ill. Aug. 31, 1992) (citing *Califano v. Sanders*, 430 U.S. 99, 109 (1977), *Steebe v. United States R.R. Retirement Bd.*, 708 F.2d 250, 255–56 (7th Cir. 1983), and *Hennings v. Heckler*, 601 F. Supp. 919, 922 (N.D. Ill. 1985)) (internal citations omitted); *see also Coates on behalf of Coates v. Bowen*, 875 F.2d 97, 100 (7th Cir. 1989) (denial of request to reopen prior final benefits determination not reviewable) (citing *Califano*, 430 U.S. at 108–09). The granting of a petition to reopen, in contrast, may be reviewed on a limited basis—such a circumstance is reflected in the cases Plaintiff here cites. *Dugan*, 957 F.2d; *Wyatt*, 349 F.3d at 984 ("Because Wyatt argues only that his case was improperly reopened, our review is limited: we . . . decide . . . only whether the earlier decision to reopen Wyatt's case was proper.").

In any event, such a circumstance is not that which is before the Court, and the law is clear that in a circumstance such as this—in which the Appeals Council remands for further proceedings—the Court has no jurisdiction to review such decision. In light of the foregoing, the Court

concludes that it has no jurisdiction to address the merits of Plaintiff's contention that the Appeals Council impermissibly reversed and remanded for further consideration.

### 4.2    ALJ O'Grady's Unfavorable Decision

Plaintiff next argues that ALJ O'Grady's unfavorable decision was erroneous to such an extent that the case should not only be remanded, but specifically remanded for calculation and award of benefits. For the reasons discussed herein, the Court agrees that the record does not support ALJ O'Grady's decision, and that Plaintiff is, and was as of October 21, 2014 (when her full time employment as a lab tech ceased) disabled within the meaning of the Social Security Act. Accordingly, the Court will remand this matter for a calculation and award of benefits.

Courts' statutory power to affirm, reverse, or modify the Social Security Administration's decision "includes the . . . ability to remand with instructions for the Commissioner to calculate and award benefits to the applicant." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)). Remanding for an award of benefits "is appropriate, however, only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Id.* (citing *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005)). Remanding for an award of benefits "is a marked departure from [the] typical practice of remanding to the agency for further proceedings." *Martin v. Saul*, 950 F.3d 369, 376 (7th Cir. 2020) (citing *Briscoe*, 425 F.3d at 357 and *Wilder v. Apfel*, 153 F.3d 799, 804 (7th Cir. 1998)). Nevertheless, it is appropriate "[w]here further administrative proceedings would simply prolong [a claimant's] waiting and delay [her] ultimate

receipt of benefits." *Byers v. Astrue*, No. 1:08-c-1174-DFH-JMS, 2009 U.S. Dist. LEXIS 93332, at *39 (S.D. Ind. Oct. 5, 2009) (quoting *Podedworny v. Harris*, 745 F.2d 210, 223 (3d Cir. 1984) and citing *Tennant v. Schweiker*, 682 F.2d 707, 710 (8th Cir. 1982) and *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981)).

### 4.2.1  Absenteeism and Time Off Task

Plaintiff first argues that ALJ O'Grady failed to provide a "good explanation" for "reject[ing] a favorable opinion from its own medical consultant" on the issues of absenteeism and time off task. ECF No. 13 at 20–21 (citing and quoting *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014)). The Commissioner agrees that "the ALJ did not fully consider Dr. Brown's statements" and that remand is appropriate on that basis. ECF No. 14 at 2, 5. Nevertheless, the Commissioner disputes Plaintiff's contention that "an award of benefits is appropriate because some of . . . Dr. Brown's opined restrictions would be incompatible with work" because "there is evidence in the record . . . that could cut against Dr. Brown's opinion on remand." *Id.* at 4–5.

"An ALJ may not substitute his own judgment for a physician's opinion without relying on other medical evidence or authority in the record." *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005) (citing *Clifford*, 227 F.3d at 870). Here, ALJ O'Grady rejected Dr. Brown's prediction that Plaintiff would experience frequent work absences, in part because she considered it speculative and in part because "the claimant reported benefit from treatment when she pursued it." ECF No. 13 at 16; ECF No. 10-1 at 1027. That rejection was erroneous; Dr. Brown's prediction is corroborated by the record—indeed, by Plaintiff's medical history as a general matter, as well as by her treating physician, Dr. Polacheck.

Case 2:23-cv-00682-JPS   Filed 01/16/24   Page 13 of 31   Document 16

In a previous hearing before ALJ Ritter, a VE testified that in her professional opinion, the "customary employer tolerance for absences" was "no more than one day per month," "including any day of having to leave early or arrive late," and the "tolerance for being off task" "average[d] at no more than 10% of the workday." ECF No. 10-1 at 81, 1217–18; *see also id.* at 1097 (Mr. Knutson testimony that if an individual was "absent, tardy or leaving early two or more days a month regularly, then . . . they'll lose their employment, so there would be no work for this person."). Similarly, Mr. Knutson testified that "the amount of time off task that would be allowed for" the jobs he identified was approximately "15%" of the workday. *Id.* at 1096 ("I do think if someone is off task 15%, which is about eight minutes every hour . . . . [t]hey're not going to be productive enough to keep their job so there would be no work for this individual based on my professional experience.").

"To qualify for gainful employment one must be able to work on a 'sustained basis,' defined as eight hours a day five days a week . . . and to be incapable of gainful employment is to be totally disabled within the meaning of the Social Security Act . . . . To miss four workdays a month would reduce one's average workweek from five to four days, which would not constitute working on a sustained basis as defined by the Commission." *Voigt v. Colvin*, 781 F.3d 871, 874 (7th Cir. 2015) (citing 20 C.F.R. §§ 404.1512(a), 416.912(a); *Rollins v. Massanari*, 261 F.3d 853, 859 (9th Cir. 2001); SSR 96-8p, 1996 SSR LEXIS 5, ¶ 1; and 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A)).

Both Dr. Brown and Dr. Polacheck agreed that Plaintiff would exceed this absence and off task tolerance. ECF No. 10-2 at 865, 900 (Dr. Polacheck prediction that Plaintiff is "likely to be absent from work as a

result of the impairments or treatment" "[m]ore than four days per month" and would be off task 25% of the workday); ECF No. 10-1 at 1026 (Dr. Brown prediction that "claimant would have be [sic] absent due to pain exacerbations" once or twice a week). "The opinion of a treating physician concerning a patient's condition is 'entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record.'" *Boiles*, 395 F.3d at 426 (quoting *Clifford*, 227 F.3d at 870). Such is the case here. Dr. Polacheck predicted that Plaintiff would miss more than four days per month of work due to her condition and would be off task for at least a quarter of the workday when she was able to go to work. ECF No. 10-2 at 865, 900. This opinion is entitled to controlling weight. As noted, it conforms with the opinion of Dr. Brown, the impartial medical expert that ALJ O'Grady solicited. ECF No. 10-1 at 1026–27. It also conforms with Plaintiff's medical history; Plaintiff on multiple occasions over the years missed weeks to months of work at a time per doctor's orders due to severe pain flare ups, and she also experienced weekly debilitating migraines which would incapacitate her for hours at a time. *See, e.g.*, ECF No. 10-1 at 335–36 (treating orthopedic surgeon Dr. David Coran ("Dr. Coran") excusing Plaintiff from work for two-month period in 2014 and roughly three-month period in 2015); ECF No. 13-1 at 6–18 (documenting consistent complaints of migraines).

"If an ALJ does not afford controlling weight to such an opinion, he or she must articulate sufficient reasons for not doing so." *Allord*, 631 F.3d at 417 (citing *Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010)). For example, "[a]n administrative law judge . . . is not obligated to give controlling weight to the treating physician if he finds that opinion not worthy of such weight." *Crowell v. Kijakazi*, 72 F.4th 810, 815–16 (7th Cir. 2023) (citing *Prill*

*v. Kijakazi*, 23 F.4th 738, 750–51 (7th Cir. 2022)). In making such a determination, an ALJ considers "the length, nature, and extent of the physician and claimant's treatment relationship, whether the physician supported the medical opinions with sufficient explanations, and whether the physician specializes in the medical conditions at issue." *Id.* at 816 (citing *Elder*, 529 F.3d at 415); *see also* 20 C.F.R. § 404.1527(c) (listing five factors relevant to evaluation of the weight to attribute to a medical opinion) ("[W]e consider all of the following factors . . . ."). An ALJ may also "discount a treating physician's opinion where the judge suspects that the treating physician might be 'bend[ing] over backwards to assist a patient in obtaining benefits.'" *Crowell*, 72 F.4th at 816 (quoting *Hofslien v. Barnhart*, 429 F.3d 375, 377 (7th Cir. 2006)).

Here, ALJ O'Grady afforded "little weight" to Dr. Polacheck's opinion that Plaintiff "would be absent more than four days per month" because she considered it "speculative and without basis in the record." ECF No. 10-1 at 1020. This was error for several reasons. First, ALJ O'Grady either improperly discounted or failed to acknowledge the fact that Dr. Polacheck treated Plaintiff regularly for several years and was therefore well acquainted with Plaintiff's condition and its accompanying limitations, as well as the fact that Dr. Polacheck's prediction on absenteeism aligned with that of Dr. Brown, the impartial medical expert that ALJ O'Grady herself solicited. *See* 20 C.F.R. § 404.1527(c)(2)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion."); *Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014) ("[T]he ALJ should *explicitly* consider the details of the treatment relationship . . . .") (citing 20 C.F.R. § 404.1527(c)(2)) (emphasis added).

ALJ O'Grady appears to have failed to consider all of the factors listed in 20 C.F.R. § 404.1527. 20 C.F.R. § 404.1527(c) ("Unless we give a treating source's medical opinion controlling weight under paragraph (c)(2) of this section, we consider *all* of the following factors in deciding the weight we give to any medical opinion.") (emphasis added). Those factors include, as also set forth in *Crowell*, *supra*, the length of the treatment relationship, the frequency of examination, the consistency of the medical opinion, and whether the opinion stems from the proponent's area of specialization. *Id.* There is no indication in ALJ O'Grady's decision that she considered any of these factors. *Cf. Schreiber v. Colvin*, 519 F. App'x 951, 959 (7th Cir. 2013) ("Here, while the ALJ did not explicitly weigh each factor in discussing [the doctor's] opinion, his decision makes clear that he was aware of and considered many of the factors . . . ."). In sum, and as the Commissioner concedes, ALJ O'Grady's rejection of Dr. Brown's prediction (and Dr. Polacheck's conforming prediction) regarding expected absenteeism was erroneous. The record more than substantially demonstrates that if Plaintiff were to return to full-time employment, she would likely experience absences, if not also time off task, beyond a level that an employer would tolerate.

The Court next addresses the Commissioner's latter contention—that "even where an ALJ errs in considering a testifying physician opinion, the Seventh Circuit has remanded for further administrative proceedings rather than an award of benefits." ECF No. 14 at 6 (citing *Boiles*, 395 F.3d at 426–27). It is true that the Seventh Circuit in *Boiles* declined the plaintiff's invitation to "simply reverse the ALJ and award benefits" after concluding that the ALJ failed to appropriately consider a physician's opinion. *Boiles*, 395 F.3d at 427. But it declined to do so simply because "the record d[id]

not yet support a finding" of disability under the Act. *Id. Boiles* does not suggest that remanding for calculation and award of benefits is *necessarily* inappropriate following an ALJ's erroneous rejection of a testifying physician's opinion.

### 4.2.2 Medical Providers' Assessments that Plaintiff was Unable to Work

ALJ O'Grady gave "little weight to the statements from orthopedic [spine] surgeon" Dr. Coran regarding his excusing Plaintiff from work, in part because she asserted that his opinions "conflict[ed] with the evidence"—specifically, that "successive imaging studies showed no significant disease or stenosis" and showed "an unaided gait, an ability to heel and toe walk and intact strength gait." ECF No. 10-1 at 1019. This is not a logical inference. Dr. Coran advised Plaintiff not to work due to "pain flare up," ECF No. 13-1 at 4, and such pain flare ups very well may not have been perceptible in physical imaging or an assessment of Plaintiff's ability to walk across a doctor's office. Dr. Coran acknowledged this himself. *See* ECF No. 10-1 at 896 ("[Plaintiff] has had increased pain that I cannot explain based on her previous imaging studies."). Similarly, Dr. Brown noted that while Plaintiff most certainly suffered from "a chronic pain type syndrome," "pathologically, we cannot define what that means." ECF No. 10-1 at 1087; *see also id.* ("We believe it has to do with chronic nerve irritation and *not a specific anatomical disruption . . . .*") (emphasis added).

"[A]n ALJ cannot disregard subjective complaints of disabling pain just because a determinable basis for pain of that intensity does not stand out in the medical record." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009) (citing *Johnson v. Barnhart*, 449 F.3d 804, 806 (7th Cir. 2006)); *see also Pierce v. Colvin*, 739 F.3d 1046, 1049–50 (7th Cir. 2014) ("An ALJ may not discount a

claimant's credibility just because her claims of pain are unsupported by significant physical and diagnostic examination results . . . . Pain can be severe to the point of being disabling even though no physical cause can be identified . . . .") (internal citations omitted) (collecting cases). "[P]ain can be real and intense yet its cause not be discernable by medical tests or examinations . . . ." *Adaire v. Colvin*, 778 F.3d 685, 687 (7th Cir. 2015). Similarly, it is error for an ALJ to draw an adverse inference from a claimant's demonstration of a "normal gait"—i.e., a walk without a limp— without taking the next logical step and "explain[ing] why, if the applicant's evidence of pain were truthful, it would imply that [s]he limps." *Adaire*, 778 F.3d at 688. ALJ O'Grady discounted Plaintiff's and her medical providers' assessments of her condition and its limitations in part because Plaintiff demonstrated "an unaided gait [and] an ability to heel and toe walk" without any suggestion that a person experiencing Plaintiff's condition as represented should necessarily demonstrate a limp. ECF No. 10-1 at 1019. That was error.

ALJ O'Grady also erroneously disregarded assessments—by both Dr. Polacheck and Dr. Coran, as well as by Plaintiff's treating nurse practitioner—that Plaintiff was unable to work on the asserted ground that the determination of a claimant's ability to work was an issue reserved to the Commissioner. ECF No. 10-1 at 1019 ("[Dr. Coran] often indicated . . . that the claimant could not work, an issue . . . reserved to the Commissioner."), 1020, 1024 ("Nurse Jones-Cooper's broad statement regarding the claimant's inability to sustain work activity on a regular basis infringes on an issue reserved to the Commissioner and is given little weight."). "Whether a claimant qualifies for benefits is," indeed, "a question of law . . . but a medical opinion that a claimant is unable to work

is not an improper legal conclusion . . . ." *Lambert v. Berryhill,* 896 F.3d 768, 776 (7th Cir. 2018) (citing *Garcia v. Colvin*, 741 F.3d 758, 760 (7th Cir. 2013) and *Bjornson v. Astrue*, 671 F.3d 640, 647–48 (7th Cir. 2012)).

It is also noteworthy that Dr. Coran treated Plaintiff for over a decade and through multiple spinal surgeries—his area of specialty—a fact that ALJ O'Grady does not appear to have considered. *See generally* ECF No. 13-1 (appointments with Dr. Coran from January 2007 into 2016); 20 C.F.R. § 404.1527(c)(2)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion."); 20 C.F.R. § 404.1527(c)(5) ("We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist."); *see also Lambert,* 896 F.3d at 775–76 (it was error for ALJ to fail to "explain his view of the[] [20 C.F.R. § 404.1527(c)] factors in assigning little weight to [the opinions of a treating neurosurgeon]," particularly in light of the surgeon's specialization in spinal disorders, having treated the plaintiff for over a year, having examined the plaintiff at least 15 times, and having performed multiple surgeries on the plaintiff).

### 4.2.3   Equal-Distribution Method

Plaintiff also argues that ALJ O'Grady erred in accepting Mr. Knutson's jobs numbers. ECF No. 13 at 23–25. Specifically, Plaintiff contends that Mr. Knutson's equal-distribution method was unreliable and that ALJ O'Grady therefore erred in relying on it. *Id.* In response, the Commissioner notes that it "is not defending the ALJ's reliance on VE testimony," but that "it would be appropriate to obtain further vocational expert testimony upon remand" rather than remand for an award of

benefits. ECF No. 14 at 6 ("When remanding cases for the reliance on flawed VE testimony, the Seventh Circuit has typically remanded for further proceedings, rather than an award of benefits.") (citing *Brace v. Saul*, 970 F.3d 818, 823 (7th Cir. 2020) and *Chavez v. Berryhill*, 895 F.3d 962, 970–71 (7th Cir. 2018)).

While the Seventh Circuit has expressed concern about the reliability of the equal distribution method utilized in this case, it has "never categorically barred VEs from using that method in social security disability hearings" and "[i]t is not, by itself, reversible error for an ALJ to rely on the equal distribution method . . . to make a step-five job-number determination." *Hohman v. Kijakazi*, 72 F.4th 248, 254 (7th Cir. 2023). For that reason, in reaching its conclusion herein, the Court does not rely on ALJ O'Grady's acceptance of VE testimony based on the equal distribution method.

### 4.2.4 Opinions of Syd Foster and Murari Bijpuria

In opposing a remand for calculation and award of benefits, the Commissioner also contends that there is medical evidence in the record "suggesting that Plaintiff has better functioning than the disabling limitations she alleges." ECF No. 14 at 3. Specifically, and baldly, the Commissioner writes, "[i]f credited, the opinions of Syd Foster, D.O. [("Dr. Foster")], and Murari Bijpuria, M.D. [("Dr. Bijpuria")], might support a finding that Plaintiff is not disabled." *Id.*

First of all, the Commissioner does not specify to what specific "opinions" of Dr. Foster and Dr. Bijpuria it refers. The Commissioner instead cites to the entirety of those doctors' RFC assessments, leaving the Court to speculate as to which portion or portions the Commissioner believes supports the finding that Plaintiff is not disabled. ECF No. 14 at 3

Case 2:23-cv-00682-JPS   Filed 01/16/24   Page 21 of 31   Document 16

(citing ECF No. 10-1 at 113–14 (Dr. Foster assessment) and 134–37 (Dr. Bijpuria assessment).

Secondly, crediting the opinions of those non-examining doctors would necessarily require rejecting, or at least discounting to some extent, the opinions of Plaintiff's multiple treating medical providers, and the Commissioner does not even attempt to argue that doing so would be appropriate here. *Thompson v. Berryhill*, 722 F. App'x 573, 58 (7th Cir. 2018) ("Generally, 'a contradictory opinion of a non-examining physician does not, by itself, suffice' to reject 'an examining physician's opinion.'") (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)); *Israel v. Colvin*, 840 F.3d 432, 438 (7th Cir. 2016) (ALJ did not adequately "explain[] the value of the non-treating physicians" and "the Commissioner does not explain why the[] opinions [of non-treating physicians] are entitled to any weight let alone more weight than that of the treating physician.") (citing *Gudgel*, 345 F.3d at 470 and *Beardsley*, 758 F.3d at 839).

### 4.2.5 Perception of Improvement with Treatment

The Commissioner also argues that because "Plaintiff reported some improvement with treatment," remand for an award of benefits is inappropriate. ECF No. 14 at 4. ALJ O'Grady made the same assertion as grounds for denying Plaintiff benefits no less than eight times throughout her decision, notwithstanding the Appeals Council's warning that "the prior decision finding of medical improvement was not supported." ECF No. 10-1 at 1003–23. The Commissioner's argument is, and can only be, halfhearted at best.

"The key is not whether one has improved . . . but whether they have improved enough to meet the legal criteria of not being classified as disabled." *Murphy v. Colvin*, 759 F.3d 811, 818 (7th Cir. 2014). For this reason,

Case 2:23-cv-00682-JPS   Filed 01/16/24   Page 22 of 31   Document 16

the Commissioner's broad statement that "[t]o the extent that improvement alleviated Plaintiff's symptoms, they were not disabling" is overbroad and false. ECF No. 14 at 4 (citing *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015)).

"When assessing the ability to work, any alleged improvement does not necessarily indicate that the individual is capable of working full-time . . . ." *Wright v. Saul*, No. 2:20-CV-261 DRL, 2021 U.S. Dist. LEXIS 179604, at *19–20 (N.D. Ind. Sept. 21, 2021) (citing *Murphy*, 759 F.3d at 819). Indeed, "[t]here can be a great distance between a patient who responds to treatment and one who is able to enter the workforce . . . ." *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). Affording great weight, as ALJ O'Grady did here, to the perception of "improvement" in a claimant's condition is particularly concerning when the claimant "has a chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs." *Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008). Such an individual "is likely to have better days and worse days . . . " *Id.*

In her decision declining to find Plaintiff disabled, ALJ O'Grady repeatedly discounted or minimized the weight afforded to the opinions of both examining and non-examining physicians alike, in part based on her contention that Plaintiff "reported improvement with treatment." ECF No. 10-1 at 1024; *see also, e.g., id.* at 1022 (affording Dr. Douglas Milosavljevic's ("Dr. Milosavljevic") "more restrictive sitting, standing and walking findings . . . little weight" in part due to Plaintiff's having "reported improvement with treatment"); *id.* at 1021 (affording Dr. Milosavljevic's "sitting, standing and walking crouching, stooping and balancing tolerances . . . little weight" in part because Plaintiff "reported improvement with treatment"); *id.* at 1019 (concluding that "the objective medical

evidence and other evidence of record is not consistent with the degree of limitation alleged" in part due to "the benefits from treatment"). She failed, however, to discuss whether such perceived improvement from treatment was material and whether it had any bearing on Plaintiff's ability to work full-time.[2] *See Wright*, 2021 U.S. Dist. LEXIS 179604, at *20 ("20 C.F.R. § 404.159(a) . . . requires the ALJ to determine if there has been any improvement in the individual's condition, *and whether that improvement is related to the individual's ability to work.*") (emphasis added).

To the extent that Plaintiff experienced any improvement in her condition over the last decade, it stems largely from epidural steroid, facet joint, medial branch nerve block, and trigger point injections which

---

[2]Similarly, ALJ O'Grady, at no fewer than eight points throughout her decision, discounted or minimized the weight afforded to the opinions of both examining and non-examining physicians on grounds of Plaintiff's lumbar spine disease appearing "stable." ECF No. 10-1 at 1019 (concluding that "the objective medical evidence and other evidence of record is not consistent with the degree of limitation alleged" in part because Plaintiff's lumbar spine disease was "stable"); *id.* at 1021 (affording Dr. Milosavljevic's opinion "little weight" in part because "spine imaging has been stable"). She also discounted Plaintiff's own allegations "regarding the degree of limitation associated with her symptoms" in part because "imaging of her lumbar spine has remained stable with no evidenced significant disease or stenosis and her EMG was normal." *Id.* at 1015, 1017.

"[A] stable condition does not necessarily indicate an ability to perform full-time work." *Joanne L.L. v. Cmm'r of Soc. Sec.*, No. 17-cv-1107-CJP, 2018 U.S. Dist. LEXIS 161029, at *17 (S.D. Ill. Sept. 20, 2018) ("The Court also finds troubling the ALJ's focus on Plaintiff's improved symptoms and 'stable' condition.") (citing *Murphy*, 759 F.3d at 819); *see also Murphy*, 759 F.3d at 819 ("Simply because one is characterized as 'stable' . . . does not necessarily mean that she is capable of doing light work."). ALJ O'Grady failed to build the logical bridge with respect to how this perceived "stability" in Plaintiff's condition allowed for the inference that Plaintiff could work full time. Indeed, Dr. Coran also once characterized Plaintiff's situation as "stable," but his use of the word conveyed a different perspective. ECF No. 10-1 at 724 ("[Plaintiff's] situation is chronic and stable . . . . [S]he will have to try additional pain management . . . It is unclear if she will have any improvement in her pain in the near future. She may have to live with the pain for the foreseeable future.").

provided some partial pain relief, and typically only on a short-term basis. *See* ECF No. 13-1 at 2, 3 ("Previous epidural injections noted to have provided 50% improvement at the L4 and L5 nerve root levels."), and 4 ("[V]arious injections and ablation treatments . . . have reduced pain levels from 8/10 down to a 5/10 for about 2 to 3 months but when the benefit wore off, she returned to 8/10 on a daily basis."); ECF No. 10-1 at 107 (characterizing relief from injections as "[m]inimal" and "temporary"). Notwithstanding those injections, as well as participation in physical and chiropractic therapy, Plaintiff consistently continued to report significant pain and numbness, to demonstrate restricted range of motion and endurance, and to experience severe flare ups, prompting her spinal surgeon to advise her not to work whatsoever for multiple months at a time and prompting multiple emergency room visits. ECF No. 13-1 at 7; *id.* at 9 (March 2019 certification from Dr. Milosavljevic of "[P]laintiff as totally incapacitated from work"); ECF No. 10-1 at 1411 ("[T]he entire medical evidence shows that the claimant had limited range of motion . . . ."); ECF No. 10-2 at 1036 (emergency room record noting that Plaintiff "presents to the ED c/o back pain that has increased today. She has fentanyl patch and oxycodone, but notes her pain was not relived [sic] by this today. She also c/o vomiting due to pain."). For years, Plaintiff also demonstrated an inability to walk more than a couple of blocks, to sit for more than a half hour at a time, and to stand for more than a half hour at a time due to her severe pain and other symptoms. ECF No. 13-1 at 5, 6. While those figures fluctuated in both directions over the years, Plaintiff has experienced little to no long-term, material improvement with respect to those limitations.

Notwithstanding the partial and short-term benefit of the injections, Dr. Polacheck described Plaintiff's prognosis in September 2016 as "poor,"

characterized her impairments as "permanent," and noted that Plaintiff would be off task for over 25% of a workday and would miss more than four days per month of work due to her condition. *Id.* at 6; ECF No. 10-1 at 84–85. Dr. Polacheck explicitly found that Plaintiff had experienced "[n]o improvement in her condition over the last > 12 months"—i.e., for the entirety of 2016 (a period during which Plaintiff received injections). ECF No. 10-1 at 88. She also noted that Plaintiff's pain levels were regularly interfering with her sleep. *Id.* at 1527–28. Doctors on multiple occasions also reported "findings consistent with fibromyalgia and myofascial pain in addition to pain associated with degenerative disc disease," ECF No. 13-1 at 7, 3, although Dr. Brown testified before ALJ O'Grady that he could not officially "establish fibromyalgia as a diagnosis," ECF No. 10-1 at 1081. And notwithstanding her participation in physical and chiropractic therapy, Plaintiff reported "increasing" pain over the following years, "rate[d] her pain on a daily basis at 8-9/10," received emergency room treatment for exacerbations in pain, and was "limit[ed] . . . to substantially less than a full range of sedentary work" in May 2019. ECF No. 13-1 at 4, 8–9; ECF No. 10-1 at 1531. While providers at times noted that Plaintiff saw "improvement from her physical therapy treatment," at other times her participation in recommended physical therapy actually worsened her condition; indeed, in May 2021, a provider noted that Plaintiff's "pain levels have stayed relatively unchanged" since beginning physical therapy. ECF No. 10-2 at 1378, 1195; ECF No. 10-4 at 38; ECF No. 10-1 at 1532 (July 2018 note that Plaintiff was "participating in physical therapy, but it is aggravating her lumbar pain"); ECF No. 10-3 at 45–46, 712 ("Patient reports no relief with therapy but is willing to continue to participate."), 812 ("PT seemed to aggravate the pain I had in my hip.").

She also experienced chronic migraines from February 2016 through 2022 notwithstanding treatment. ECF No. 13-1 at 6–18 (acknowledging "migraine headaches of a full blown nature occurring . . . at a frequency of 2 to 3 times per week" or, at worst, "about 15 times per month," accompanied by "photophobia, phonophobia, nausea and vomiting"); *see also* ECF No. 10-2 at 749–52; ECF No. 10-4 at 352 (Plaintiff noting in May 2022 that she is "[s]till having about 1-2 migraines/week[,] some are severe.").[3] Plaintiff avers that was prescribed "additional migraine

---

[3]ALJ O'Grady concluded that "the claimant's reports of severe migraines multiple times per week for years are not supported by her infrequent pursuit of treatment." ECF No. 10-1 at 1019; *see also id.* at 1008. The record does not support this conclusion. Plaintiff reported migraine headaches to her doctor on no less than six occasions—i.e., roughly every other month—in 2016 alone. ECF No. 13-1 at 6–7. She continued to report "increased migraines" to her physicians, nurse practitioner, and neurologist in the following years, and she tried multiple different medications to alleviate the symptoms of her migraines, some of which worked better than others. *Id.* at 7–18 ("[O]ngoing migraine headaches occurring 2 to 3 times per week with photophobia, phonophobia, nausea and vomiting for about a year. Total headaches approximately 15 times per month beginning in the center of the forehead and goes up and back to occiput. Topomax is not providing significant relief. Medication Emgality provided some benefit although migraines continue to occur at almost 15 per month."); ECF No. 10-2 at 866 ("By April of 2020, the claimant had been referred to Dr. Shah, a neurologist specializing in migraine headaches. At that point, the medication Ajovy, a monthly injection[,] had been added for severe migraine pain."). She also testified before ALJ O'Grady that she received Emgality—"a monthly injection for migraines"—and took Nurtec "whenever the migraine is bad enough," which equated to about "[t]wo to three times a week." ECF No. 10-1 at 1062. Notes from her mental health provider reflect Plaintiff feeling "[w]orn out" by her persistent pursuit of treatment to alleviate her various symptoms. ECF No. 10-3 at 1409 ("Numerous medical appts. 'Worn out.' Is this going to be the rest of my life? Dr. appts every day? Exhausted . . . .").

But even if ALJ O'Grady had been correct as a factual matter that Plaintiff failed to pursue sufficient treatment for her migraines, she would still have erred as a matter of law. "[W]hile infrequent treatment . . . can support an adverse credibility finding, . . . the ALJ must not draw any inferences about a claimant's condition from this failure unless the ALJ has explored the claimant's explanations as to the lack of medical care." *Moss*, 555 F.3d at 562 (quoting *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008)) (internal quotation marks omitted); *Beardsley*, 758 F.3d

medications" in 2018 but that "the frequency and intensity of the headaches" nevertheless "worsened," at which point she was referred to "a neurologist specializing in headaches." ECF No. 10-2 at 749–50. Even with the benefit of the neurologist's treatment and regular migraine medications, Plaintiff still experiences roughly one migraine per week that lasts, at a minimum, approximately four hours and ceases only after Plaintiff has been able to isolate in a dark room. *Id.* at 750–51; ECF No. 10-3 at 751 ("[Plaintiff] reports having a migraine all weekend. Took medication but reports it 'didn't really help.'"). In sum, the record does not support the Commissioner's contention that remand for an award of benefits is inappropriate because "Plaintiff reported some improvement with treatment." ECF No. 14 at 4. ALJ O'Grady failed to build the logical bridge with respect to how any improvement Plaintiff experienced could allow for

---

at 840 ("[A]n ALJ 'must not draw any inferences' against claimant for lack of treatment without inquiring into factors such as the claimant's ability to pay and whether she has structured daily activities 'so as to minimize symptoms to a tolerable level.'") (quoting Social Security Ruling 96-7p, 1996 SSR LEXIS 4).

From the Court's review of the record, including the entirety of the transcript of the hearing before ALJ O'Grady at which Plaintiff testified, it does not appear that ALJ O'Grady explored or solicited testimony regarding Plaintiff's explanation for the perceived lack of treatment of her migraines. Had she done so, she might have discovered that Plaintiff did, in fact, encounter difficulties in receiving treatment for her condition, to the point that she experienced opioid withdrawal in 2018. *See* ECF No. 10-2 at 957 (April 2018 note that Plaintiff's "prescribing pain doc [sic] no longer covered by insurance. Difficult to find new provider . . . . Tried CBP oil for pain as has been stretching out pills & patches."), at 1037 ("She used to follow up with a pain specialist, but she no longer accepts her insurance . . . ."), at 1074 ("[Plaintiff's] presentation was concerning for opiate withdrawal. She did report taking less pain medication recently because she is transitioning from one pain doctor to another and therefore does not have refills for her prescriptions."), and at 1245 ("[Plaintiff] is unable to see Dr. Polacheck due to insurance issues."). It was therefore error for ALJ O'Grady to draw an adverse inference against Plaintiff regarding the perceived infrequency of treatment.

the conclusion that she was not disabled and could sustain full-time employment.

5.    **CONCLUSION**

The Court has reviewed the record, the ALJ's decision, and the parties' arguments. In declining to find Plaintiff disabled, ALJ O'Grady erred in several material respects. Remarkably, she afforded little weight to the vast majority of the opinions provided by Plaintiff's long-term, treating medical providers—those in the best position to assess Plaintiff's condition and its limitations. For example, ALJ O'Grady discounted both Plaintiff's and Plaintiff's medical providers' assessment of Plaintiff's pain levels and limitations on the grounds that Plaintiff's condition appeared "stable" in physical imaging and that Plaintiff had experienced improvement with treatment. But ALJ O'Grady's own medical expert, Dr. Brown, indicated that Plaintiff could and would experience intense pain without any "specific anatomical disruption." ECF No. 10-1 at 1091; *see also id.* at 1092 ("[O]ver time, . . . less and less stimuli can produce the same intensity of pain without any anatomical change other than at . . . a very microscopic level in relation to the nerves."). In other words, ALJ O'Grady assumed—incorrectly, and without any basis in the record—that if there was no discernable change in Plaintiff's physical imaging, then Plaintiff would not experience exacerbations in pain. Furthermore, and as discussed above, ALJ O'Grady failed to discuss how the stability and improvement she perceived in Plaintiff's condition allowed for the conclusion that Plaintiff could work full time.

In any event, such a conclusion cannot logically be made here; notwithstanding over a decade of treatment including multiple surgeries, physical and chiropractic therapy, steroid injections, and a heavy and daily

reliance on opioids and narcotics, Plaintiff continues to experience severe flare ups in pain, numbness, and migraines, among other symptoms. Treating and non-treating doctors alike have agreed that these symptoms will cause Plaintiff to be absent from work at least one to two days per week, as well as off task for a not insignificant portion of the days in which she can attend work. There is no doubt, then, that Plaintiff is disabled within the meaning of the Social Security Act.

Remanding for an award of benefits "is appropriate . . . when a remand for additional fact finding would serve no useful purpose" or "where the record overwhelmingly supports a finding of disability." *McGraw v. Apfel*, 87 F. Supp. 2d 845, 858 (N.D. Ind. Dec. 29, 1999) (citing *Lindner v. Sullivan*, 902 F.2d 1263, 1267 (7th Cir. 1990)); *Lechner v. Barnhart*, 321 F. Supp. 2d 1015, 1037 (E.D. Wis. 2004) (citing *Worzalla v. Barnhart*, 311 F. Supp. 2d 782, 800 (E.D. Wis. 2004)). Such is the case here. Remanding for further proceedings would simply delay Plaintiff's inevitable receipt of benefits. *See Byers*, 2009 U.S. Dist. LEXIS 93332, at *39 (quoting *Podedworny*, 745 F.2d at 223 and citing *Tennant*, 682 F.2d at 710 and *Lewin*, 654 F.2d at 635). Plaintiff has had hearings before three different ALJs, one of whom held a supplemental hearing and then retired without ever issuing a decision. ECF No. 10-2 at 753. Enough is enough.

The Court is not compelled by the Commissioner's arguments opposing a remand for benefits. The record demonstrates that, irrespective of the treatment Plaintiff has sought and received over the past decade, she continues to experience debilitating exacerbations of pain and migraines which doctors—examining and non-examining alike—agree would cause Plaintiff to be absent from work beyond a level that is tolerable to employers as a general matter. Remanding for a calculation and award of

benefits in this case is appropriate. Accordingly, the Court concludes that the decision of the Commissioner must be reversed and remanded for a calculation and award of benefits.

Accordingly,

**IT IS ORDERED** that the decision of the Commissioner of Social Security in this matter be and the same is hereby **REVERSED** as stated in the terms of this Order, and this matter be and the same is hereby **REMANDED** to the Commissioner of Social Security for a calculation and award of benefits with an onset date of October 21, 2014; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED.**

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 16th day of January, 2024.

BY THE COURT:

_____

J.P. Stadtmueller
U.S. District Judge